970 So.2d 942 (2008)
Walter PROPHET, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-3662.
District Court of Appeal of Florida, Fourth District.
January 2, 2008.
*943 Carey Haughwout, Public Defender, and Peggy Natale, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Myra J. Fried, Assistant Attorney General, West Palm Beach, for appellee.
EMAS, KEVIN M., Associate Judge.
The issue we confront is whether a police officer seeking to search a shared residence is required by the Fourth Amendment to secure consent from a physically absent, but nearby, tenant after that officer has already obtained a valid consent from a co-tenant who is on the premises. Finding no constitutional violation, we affirm.
Based upon reports of significant drug-related crime in the area, the West Palm Beach Police Department set up surveillance within one of the city's neighborhoods. During the course of the surveillance, Officer Paul Creelman observed appellant, Walter Prophet, go into a nearby residence, emerge with baggies of suspect marijuana, and clip those baggies to a fence along the property line of the residence. Officer Creelman also observed Prophet engage in several hand-to-hand sales of marijuana. Officer Creelman approached the fence and, after inspecting the baggies and determining they contained marijuana, arrested Prophet. Prophet was handcuffed and placed in the back of a nearby patrol car.
Officer Creelman then went to the residence where he had earlier observed Prophet exiting with the baggies of marijuana. At the doorway of the residence, Officer Creelman spoke with a Ms. Starks, who indicated she lived there and that she and Prophet were cousins. Ms. Starks gave police consent to search the house. Officer Creelman called for a supervisor before beginning the search. While awaiting the supervisor's arrival, Officer Creelman returned to the patrol car and spoke with Prophet, asking for his name, date of birth, and residence address.
Upon returning to the residence, Officer Creelman met a second woman, Ms. Jones, who said she lived in the residence and shared a bedroom with Prophet. Ms. Jones consented to a search of the bedroom, where police discovered a firearm, cocaine, marijuana, a scale, baggies, and Prophet's wallet. Prophet was charged by information with possession of a firearm by a convicted felon; trafficking in cocaine; possession of cocaine with intent to sell within 1000 feet of a park, possession of marijuana with intent to sell within 1000 feet of a park, and possession of drug paraphernalia for production.
Prophet moved to suppress the evidence seized in his bedroom, contending the warrantless search was unreasonable under the Florida and United States Constitutions.[1] *944 The trial court denied the motion. The parties stipulated that the ruling on the motion to suppress was dispositive, and Prophet pled guilty to the charges of possession of a firearm by a convicted felon and trafficking in cocaine, reserving his right to appeal the denial of the motion. We have jurisdiction. See Fla. R.App. P. 9.140(b)(2)(A)(i).
Relying on the United States Supreme Court decision in Georgia v. Randolph, 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006), Prophet contends that, under the circumstances, the search was unreasonable because the police should have obtained his consent before searching the home, and that the consent of the co-tenants was insufficient to justify the search. However, neither Randolph nor its predecessor, United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), supports Prophet's position.
In Matlock, the defendant was arrested in the front yard of a house he shared with a woman, and he was placed in a nearby patrol car. The woman co-tenant then consented to a search of the house, where police discovered cash from a bank robbery. Matlock was not asked to consent to the search nor did he voice an objection to the search. In reversing the lower court's order suppressing the evidence seized, the United States Supreme Court held that "the consent of one who possesses common authority over premises . . . is valid as against the absent, nonconsenting person with whom that authority is shared." 415 U.S. at 170, 94 S.Ct. 988.
The Supreme Court in Matlock recognized that where more than one person resides in a home, each resident assumes the risk that another resident may permit a search to be conducted in an area over which they share common authority. In the instant case, as in Matlock, Defendant was arrested and placed in a patrol car near the residence subsequently searched. Matlock did not impose upon the police a duty to advise the absent arrestee of the intent to search or require that police endeavor to obtain the arrestee's consent. It would appear, therefore, that Matlock compels affirmance.
Prophet asserts his situation is distinguishable from Matlock in two significant ways: first, the rationale of Matlock must be reconsidered in light of the United States Supreme Court's recent decision in Randolph; and second, unlike the officer in Matlock, the officer in the instant case did in fact return to the patrol car to speak with Prophet prior to beginning the search, and, at that time, could and should have advised Prophet of the impending search and secured his consent. Prophet contends the officer's failure to do so renders unreasonable the subsequent search. The rationale of Matlock and Randolph, however, reveals that Prophet's argument is without merit.
Matlock involved two co-tenants, one present at the residence and consenting to the search, the other physically absent from the residence (and not consenting or objecting). The Matlock Court left for another day the question of whether police may conduct a search of the premises where both residents are present, one consenting *945 to the search and the other objecting to the search.
In Georgia v. Randolph, the Court answered that question in the negative:
[A] warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident.
547 U.S. at 120, 126 S.Ct. 1515 (emphasis supplied). In order for Randolph to be applicable to the instant case, Prophet would have to have been "physically present" at the residence and voiced an "express refusal of consent." Instead, the record establishes that Prophet was not physically present at the house, but handcuffed in the back of a patrol car,[2] voicing no objection to the search.
Prophet does not attempt to argue that the record establishes otherwise. Instead, Prophet asserts that the trial court erred in concluding that the police officer's actions in this case were reasonable based upon a finding that it would have been "impractical" for Officer Creelman to return to the patrol car to obtain Prophet's consent prior to the search. Prophet contends that, because Officer Creelman did in fact return to the patrol car to speak with him prior to the search, it was unreasonable not to secure his consent at that point. In making this argument, Prophet urges this court to apply a "reasonableness" analysis to the rule announced in Randolph.
While we recognize that reasonableness is the traditional foundation of Fourth Amendment jurisprudence, the Supreme Court was explicit in explaining that the rule in Randolph is intended as a bright line, rendering irrelevant any consideration of the practical or impractical nature of locating a physically absent co-tenant:
Although the Matlock defendant was not present with the opportunity to object, he was in a squad car not far away. . . . If [Matlock is] not to be undercut by today's holding, we have to admit that we are drawing a fine line; if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out.

. . . [T]here is practical value in the simple clarity of complementary rules, one recognizing the co-tenant's permission when there is no fellow occupant on hand, the other according dispositive weight to the fellow occupant's contrary indication when he expresses it. . . . [W]e think it would needlessly limit the capacity of the police to respond to ostensibly legitimate opportunities in the field if we were to hold that reasonableness required the police to take affirmative steps to find a potentially objecting co-tenant before acting on the permission they had already received. . . . [E]very co-tenant consent case would turn into a test about the adequacy of the police's efforts to consult with a potential objector. Better to accept the formalism of distinguishing Matlock from this case than to impose a requirement, time-consuming in the field and in the *946 courtroom, with no apparent systemic justification.
Id. at 121-22, 126 S.Ct. 1515 (emphasis supplied).
Although the trial court did find it would have been impractical for Officer Creelman to return to the patrol car to obtain Prophet's consent prior to the search, we need not address whether such a determination is supported by the record or whether the failure to obtain Prophet's consent under the circumstances was reasonable. As the Supreme Court makes clear, such considerations are unnecessary in light of the bright-line rule established by Randolph. The United States Supreme Court has decided as a matter of law that a police officer who has obtained a valid consent from a physically present tenant does not act unreasonably by conducting a search of the shared premises without obtaining consent from a physically absent, but nearby, co-tenant.
Affirmed.
KLEIN and GROSS, JJ., concur.
NOTES
[1] By reason of the 1982 amendment to article I, section 12, of the Florida Constitution, Florida courts are bound to follow the United States Supreme Court's interpretations of the Fourth Amendment and to provide no greater protection than those interpretations. This amendment brought the state's search and seizure laws into conformity with all decisions of the United States Supreme Court rendered prior and subsequent to adoption of that amendment. Perez v. State, 620 So.2d 1256 (Fla.1993); Bernie v. State, 524 So.2d 988 (Fla.1988).
[2] Of course, if the police placed Prophet in the patrol car to prevent him from being physically present to object to the search of the home, this could provide a basis for relief. However, there is nothing in the record to suggest the police acted with an improper or pretextual motive. As the Supreme Court stated in Randolph: "So long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection," 547 U.S. at 121, 126 S.Ct. 1515, the valid consent of a physically present co-tenant is sufficient to authorize the warrantless search.